JOHN A. BUTLER v. BLONIGEN CONSTRUCTION, INC., AND OTHERS.

252 N. W. 2d 246.

February 18, 1977—No. 46792.

*Yngve & Reiersgord* and *Thomas E. Reiersgord*, for relators.

*Cousineau, McGuire, Shaughnessy & Anderson* and *John W. Romine*, for respondents Hagen and its insurer.

*Richard C. Smith* and *Larry Meuwissen*, for respondent employee.

PER CURIAM.

Relators, Blonigen Construction, Inc., and Verdi B. Blonigen, seek review of a decision of the Workers' Compensation Board[1] determining that John A. Butler was their employee at the time of a work-related accident and awarding Butler, a carpenter, compensation against them and Hagen Builders Co. Inc.[2] Relators challenge the board's findings that Butler was an employee and that both of them were his employers. We affirm.

Butler, a journeyman carpenter, had worked since 1960 as a general contractor, a carpentry subcontractor, or an employee. He was laid off

[1] Now the Workers' Compensation Court of Appeals, L. 1976, c. 134, § 78.

[2] Because relators did not carry compensation insurance, liability was imposed on Hagen as general contractor pursuant to Minn. St. 176.215, subd. 1, and Hagen was granted subrogation against relators pursuant to § 176.215, subds. 2 and 3.

in June 1973. Verdi Blonigen, also a carpenter, was a general contractor and the sole owner and stockholder of Blonigen Construction, Inc. He did business under his own name, as Blonigen Construction, and as Blonigen Construction, Inc. Shortly after being laid off, Butler and John Lundin, who is also a carpenter, went to work for Blonigen. On the first of Blonigen's jobs, a house in Plymouth, Butler worked as a subcontractor. On the next, an addition to a home in Glen Lake, Butler claims he worked as an employee for $10 an hour, while Blonigen claims Butler was again a subcontractor. Work on the Glen Lake project was interrupted by a strike, and Butler was paid for his work at the hourly rate.

While Butler was working on the Glen Lake job, Hagen contracted to construct a house in Minnetonka and wished to subcontract the carpentry. James Gilbertson, one of Hagen's owners, contacted Blonigen. He could not handle the job himself but talked with Butler about it, who was interested but thought Hagen's price of $3,100 was low. Gilbertson refused to increase it, and Blonigen, without consulting Butler, executed a contract with Hagen. Butler and Blonigen agree that their initial understanding was that Butler and Lundin would do the work and upon completion of the job, receive the entire $3,100. Butler and Lundin insist that this understanding was not a contract but preliminary only and called for a written contract. Butler said he asked Blonigen two or three times to draw up the contract, but Blonigen did not do so. Blonigen did not reveal to Hagen that Butler and Lundin were to do the work.

Butler worked on the Minnetonka job several days before he was seriously injured in a fall on August 6, 1973. Hagen had already paid Blonigen the full contract price, and he attempted unsuccessfully to finish the job. He eventually paid Lundin and Butler for their work at a rate of $10 an hour, using a personal check and money orders purchased by Blonigen Construction, Inc.

Our review of the evidence satisfies us that the findings challenged by relators—that Butler was an employee and that he was the employee both of Blonigen Construction, Inc., and Verdi Blonigen—are supported by substantial evidence in view of the entire record as submitted and accordingly must be affirmed. Hammes v. Suk, 291 Minn. 233, 190 N. W. 2d 478 (1971); Minn. St. 15.0425.

Although relators claim that Blonigen acted only as an agent for Butler, the evidence did not require the board to accept this contention or to find that Butler was an independent contractor. In finding that Butler was, instead, an employee, the board applied the well-established

criteria repeated in Lundy v. City of Worthington, 303 Minn. 39, 40, 226 N. W. 2d 295, 296 (1975):

"* * * (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance."

The most important of these tests is whether Blonigen had the right to control the means and manner of performance. Hammes v. Suk, 291 Minn. 233, 235, 190 N. W. 2d 478, 480 (1971). While the evidence is inconclusive with respect to some of the other tests, the record supports the board's conclusion that Blonigen retained control over Butler's work.

The record also discloses adequate evidentiary support for the board's finding that both Blonigen Construction, Inc., and Blonigen individually were Butler's employers since the documents placed in evidence by relators themselves reveal that Blonigen customarily carried on his business, including his relationships with Butler, both in an individual capacity and through the corporation.

Respondent is allowed $350 attorneys fees.

Affirmed.